IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **STANLEY WATKINS,** | : |
| | : |
| **Plaintiff,** | : |
| | : Case No. 2:21-cv-04482 |
| v. | : |
| | : CHIEF JUDGE ALGENON L. MARBLEY |
| **OHIO DEPARTMENT OF EDUCATION,** *et al.* | : |
| | : |
| | : MAGISTRATE JUDGE DEAVERS |
| **Defendants.** | : |

## OPINION & ORDER

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction. (ECF No. 16). The hearing on this Motion was held on Wednesday, February 23, 2022, at 10:00 a.m. For the reasons set forth below, the Court finds that the *Younger* abstention doctrine applies to this case, and, as a result this case is **STAYED**. Accordingly, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction (*Id.*).

### I. BACKGROUND

#### A. Facts

Plaintiff is a former special education teacher previously employed with the Columbus City Schools ("CCS"). (ECF No. 1 at 3). In 2015, the Ohio Department of Education ("ODE") issued Plaintiff a four-year alternative license, enabling him to teach children with disabilities. (*Id.*). After being observed falling asleep during class, among other things, CCS terminated Plaintiff's employment. (*Id.* at 6). Following his termination, the ODE initiated an investigation concerning Plaintiff's license to teach. (*Id.* at 3).

Sometime in early 2017, Plaintiff was notified that he was being investigated by ODE. (*Id.*). On March 20, 2017, Plaintiff contacted ODE requesting a copy of the "complaint." (*Id.*).

Plaintiff alleges that ODE refused his request noting that it was unable to disclose such information because it was confidential. (*Id.*). On March 26, 2018—about a year later, Plaintiff renewed his request with ODE; the state agency again refused his request on the same grounds. (*Id.*).

Approximately two years after notifying Plaintiff of the investigation, ODE provided Plaintiff with Notice of an Investigation Decision on January 23, 2019. (*Id.*). Attached to the emailed Notice was a request that Plaintiff voluntarily surrender his teaching license and agree to a permanent bar from subsequently applying. (*Id.* at 3–4). The same day Plaintiff received this Notice, he requested a hearing. (*Id.* at 4). Plaintiff then twice attempted—once in February 2019 and then in July 2019—to apply for some sort of licensure update. (*Id.*). Because his four-year license was set to expire on June 30, 2019, it is likely that at least one of these applications was for a renewal, although Plaintiff is unclear on this point. (*See id.*).

Plaintiff complains that ODE accepted his application fees yet constructively suspended his license in 2019; Plaintiff's license continues to be suspended. (*See id.*).

### B. Procedural

On February 6, 2019, Plaintiff filed his initial federal lawsuit arising from his termination as a special education teacher. (ECF No. 9 at 2). There, he similarly asserted a § 1983 claim alleging deprivation of his due process rights in that CCS failed to "properly notify him about his pre-disciplinary hearing." *Watkins v. Columbus City Sch.*, No. 2:19-CV-394, 2020 WL 1290298, at *1 (S.D. Ohio Mar. 18, 2020), *aff'd*, No. 20-3357, 2020 WL 9073357 (6th Cir. Nov. 10, 2020). The Court ultimately found that Watkins's claim was barred by the relevant statute of limitations. *Id.* at *9.

In the same suit, Plaintiff attempted to remove the now complained of ODE proceedings to federal court. *See id.* Plaintiff asserted that the Southern District of Ohio had jurisdiction

because the proceedings concerned a federal cause of action: a separate § 1983 claim. The Court rejected this argument because the proceedings arose "under Chapter 19, Title 33 of the Ohio Revised Code and Chapter 3301-73 of the Ohio Administrative Code, which allow the State Board of Education to suspend, revoke, or deny a teaching license." *Id.* Plaintiff also asserted that because he presented a defense sounding in federal law that the proceedings were removable. *Id.* at *10. The Court similarly rejected this argument noting that asserting "a federal defense is not a basis for removal." *Id.*

Watkins filed his Complaint (ECF No. 1) and Motion for Temporary Restraining Order (ECF No. 2) against Defendants in the case sub judice on September 10, 2021. Defendants include the State of Ohio, two state agencies, an agency board, and officials of those agencies. (ECF No. 1). The state agencies include the Ohio Department of Education ("ODE") and the state Attorney General's Office ("AGO"). (*Id.*). Additionally, Plaintiff is suing the state Board of Education—a decision-making body within ODE. (*Id.*). Finally, officials at the state agencies include members of the Ohio Department of Education (Paola DeMaria, former Superintendent of Public Instruction; Laura Kohler, President; Liza Dietrich, Staff Attorney; Samuel Dunsky, Staff Attorney; and Aaron Ross, former Managing Attorney at the Office of Professional Conduct) ("ODE Defendants" or "ODE") and the Attorney General's Office (Dave Yost, Ohio Attorney General; Zoe Saadey, Associate Attorney General; and Ashley Barbone, Associate Attorney General) ("AGO Defendants" or "AGO"). (*Id.*).

On September 14, 2021, the Court denied Plaintiff's Motion for Temporary Restraining Order. (ECF No. 11). Plaintiff filed his Motion for Preliminary Injunction on October 4, 2021. (ECF No. 16). In his motion for Preliminary Injunction, Plaintiff, in tandem with the complaint, seeks an injunction to reinstate his teaching license while the Court considers the constitutionality

of the state administrative proceedings. (*Id.*). Moreover, Plaintiff also requests that the Preliminary Injunction hearing be consolidated with a trial on the merits pursuant to Fed. R. Civ. P. 65(a)(2). (*Id.*). ODE Defendants and AGO Defendants each filed their Response in Opposition on October 12, 2021. (ECF Nos. 17, 18). On October 15, 2021, Plaintiff requested to appear telephonically at the hearing or, in the alternative, to continue the hearing until February 2022. (ECF No. 20). The Court granted Plaintiff's Motion to Continue and ordered Plaintiff to file a Reply brief addressing *Younger* abstention. (ECF No. 22). Plaintiff filed his Reply on January 24, 2022. (ECF No. 25).

At the Preliminary Injunction hearing, Plaintiff withdrew his request to consolidate the hearing with the trial on the merits. The Court heard argument, primarily on *Younger* abstention. No testimony nor exhibits were entered into evidence. This motion is ripe for adjudication.

## II. STANDARD OF REVIEW

The "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). In light of its "limited purpose," a preliminary injunction is "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). Accordingly, a party need not prove her case in full at a preliminary injunction hearing. *Id. But see Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (noting that the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

When considering a motion for preliminary injunction, a district court must balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the

movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 590–91 (6th Cir. 2012). These four considerations are "factors to be balanced, not prerequisites that must be met." *Certified Restoration*, 511 F.3d at 542. Whether the combination of the factors weighs in favor of issuing injunctive relief in a particular case is left to the discretion of the district court. *See Leary*, 228 F.3d at 739.

Yet, "[w]hen faced with a threshold question of whether to apply the *Younger* abstention doctrine, a court must first address the *Younger* issue prior to engaging in any analysis on the merits of the case." *Kalniz v. Ohio State Dental Bd.*, 699 F. Supp. 2d 966, 970 (S.D. Ohio 2010) (Marbley, J.) (citing *Tenet v. Doe*, 544 U.S. 1, 6, n. 4 (2005) and *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 100, n.3 (1998)); *see also Lighthouse Cmty. Church of God v. City of Southfield*, 382 F. Supp. 2d 937, 939 (E.D. Mich. 2005); *Doe v. Lee*, No. 3:20-CV-00610, 2020 WL 4926607, at *2 (M.D. Tenn. Aug. 21, 2020). Although "federal courts are not required to abstain once they have undertaken "proceedings of substance on the merits," this conclusion is not supported when federal court proceedings have not progressed passed the "embryonic stage." *See Cremeans v. Taczak*, No. 2:19-CV-2703, 2019 WL 5420256, at *7 (S.D. Ohio Oct. 23, 2019) (Marbley, J.) (internal quotations omitted).

### III. LAW & ANALYSIS

Abstention is a judicially created doctrine that precludes federal courts from deciding some matters before them, even if other jurisdictional and justiciability requirements are met. Indeed, abstention doctrines exist "to promote harmony between the state and federal courts" and to reflect the "belief that the state courts should be left to decide matters of unique importance to them."

5

*Summit Cty. Crisis Pregnancy Ctr., Inc. v. Fisher*, 830 F. Supp. 1029, 1032 (N.D. Ohio 1993). One variety of abstention doctrine, *Younger*, "cautions federal courts against exercising jurisdiction in cases where they are asked to enjoin pending state proceedings." *Fowler v. Benson*, 924 F.3d 247, 255 (6th Cir. 2019) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989)).

Specifically, *Younger v. Harris* held that federal courts may not enjoin pending state court criminal proceedings if doing so would interfere with an ongoing state criminal prosecution or detract from "proper respect for state functions." 401 U.S. 37, 44 (1971). Adhering to these underlying principles, the Supreme Court extended the *Younger* abstention doctrine to include certain state civil and administrative proceedings. *Middlesex Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982); *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 (1986); *see also Squire v. Coughlan*, 469 F.3d 551, 555−56 (6th Cir. 2006). Nonetheless, "*Younger* abstention is limited to three exceptional categories of cases: (1) parallel, pending state criminal proceeding[s]; (2) state civil proceedings that are akin to criminal prosecutions; and (3) state civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts." *Mall v. Educ. Serv. Ctr. of Cent. Ohio*, No. 2:19-CV-4795, 2020 WL 3173149, at *3 (S.D. Ohio June 15, 2020) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) (internal quotations removed)).

Furthermore, "[t]he Supreme Court has recognized that ongoing state administrative proceedings such as attorney disciplinary proceedings fall into the second exceptional category." *Id.* (citing *Middlesex*, 457 U.S. at 434–35 (1982)); *see also Am. Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 335 (6th Cir. 2007) (state attorney disciplinary proceedings). *Accord Kalniz*, 699 F. Supp. 2d at 970 (state dental board proceedings); *Lundeen v. State Med. Bd.*

6

*of Ohio*, No. 2:11-CV-1128, 2012 WL 1606654, at *1 (S.D. Ohio May 8, 2012), report and recommendation adopted, No. 2:11-CV-1128, 2012 WL 2930836 (S.D. Ohio July 18, 2012) (state medical board proceedings).  Moreover, district courts have found that claims arising from state board of education administrative proceedings concerning licensure similarly "falls into the second "exceptional" category … such that abstention under *Younger* may be required."  *Mall*, 2020 WL 3173149, at *3; *see also Durstein v. Alexander*, No. 3:19-0029, 2019 WL 6833858, at *10 (S.D.W.V. Dec. 13, 2019).  Accordingly, the federal action at issue here falls within the scope of the *Younger* abstention doctrine.  But before invoking abstention, the Court must consider the *Middlesex* factors.

### A.  *Younger* Abstention

In determining whether to abstain from interfering in a state proceeding, courts must employ "a three-factor test laid out in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 102 (1982)."  *Aaron v. O'Connor*, 914 F.3d 1010, 1018 (6th Cir. 2019). "If (1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims," abstention may be invoked. *Id.* (citing *Doe v. Univ. of Kentucky*, 860 F.3d 365, 369 (6th Cir. 2017) and *Habich v. City of Dearborn*, 331 F.3d 524, 530 (6th Cir. 2003)); *see also Kalniz*, 699 F. Supp. 2d at 970–71 (citing *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008) ("The Sixth Circuit has held that "[u]nder *Younger* abstention ... a federal court must decline to interfere with pending state civil or criminal proceedings when important state interests are involved.").

AGO defendants contend that the district court must abstain from hearing Plaintiff's claims under the *Younger* abstention doctrine. (ECF No. 18 at 1).  Because Plaintiff's three claims are all

inextricably intertwined with a state administrative proceeding—the state board of education's determination of whether to impair or revoke Plaintiff's teaching license, even absent argument on this issue, all defendants would profit from the application of *Younger*. (*See* ECF Nos. 17, 18). Although Plaintiff did not address this issue in his Motion for Preliminary Injunction, this Court ordered Plaintiff to do so in his Reply brief (ECF No. 25). (*See* ECF No. 22). This Court will consider each factor in succession.

*1. Ongoing Judicial Proceeding*

First, AGO defendants argue that there is an ongoing proceeding. (ECF No. 18 at 6). They maintain that ODE's proceedings—those that will ultimately render a decision about Plaintiff's teaching license—constitutes an ongoing proceeding under *Younger*. (*Id.*). For this proposition, they cite no authority. (*See id.*). Although ODE Defendants do not cast this argument as one supporting *Younger*, they do note that additional steps are pending in the administrative process. (ECF No. 17 at 7). For example, after a report and recommendation is issued by the hearing officer, along with any timely objections made by Plaintiff, "[t]he matter will then be submitted for decision by the State Board of Education." (*Id.*). Moreover, once a final order is issued by the State Board of Education, ODE argues, Plaintiff may appeal that "decision to an Ohio common pleas court." (*Id.*) (citing Ohio Rev. Code §§ 119.12, 3319.31(B)).

Plaintiff rejoins by arguing that the proceedings are not within *Younger*, and even if they were, the administrative proceedings are not ongoing. (*See* ECF No. 25 at 2, 7). To support his first point, Plaintiff simply describes the underlying factual situation in *Younger* which involved a state criminal proceeding. (*Id.* at 2). His argument here is simple: *Younger* involved a criminal proceeding and the underlying state proceeding is not criminal; thus, the doctrine should not apply.

8

(*Id.*). For his second point, he cites no authority, but asserts that the "referee in re Watkins with ODE has already recommended Watkins permanent denial of license." (*Id.* at 7).

Despite Plaintiff's contention that *Younger* does not apply because a state criminal proceeding is not at issue, the application of *Younger* has long been expanded to include state administrative matters other than criminal proceedings. *See Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

Further, under *Youssef v. Schuette*, this prong is satisfied. No. 19-1225, 2019 WL 11753787, at *1 (6th Cir. Sept. 17, 2019), *cert. denied*, 140 S. Ct. 617 (2019). There, a *pro se* litigant sought "an injunction requiring the [the Board of Medicine] to reinstate his medical license." *Id.* He too asserted a §1983 claim. After he applied for reinstatement, attended a hearing on the matter, but before the agency rendered a final decision, Youseff filed a complaint in federal court. The Sixth Circuit found that the underlying state proceedings were ongoing for purposes of *Younger* even though the Board rendered a decision just months after he filed his federal suit. *Id.* at *2. ("First, proceedings were ongoing …. Before [the Board's] decision, Youssef filed this suit on November 11, 2018—in other words, while his state license reinstatement proceedings were ongoing.")

Similarly, here, Plaintiff has applied for renewal of his teaching license, and attended a hearing on the matter; yet, the state Board of Education has not rendered a final decision. (ECF Nos. 1, 7). Even if what Plaintiff asserts is true—that a hearing officer issued a report and recommendation supporting permanent denial of Plaintiff's license—the Board of Education's administrative process is not finished. Indeed, the plain language of the statute governing such proceedings provides that "[n]o such recommendation shall be final until confirmed and approved by the agency as indicated by the order entered on its record of proceedings." Ohio Rev. Code §

9

119.09. Accordingly, "[t]he recommendation of the referee or examiner may be approved, modified, or disapproved by the agency." Ohio Rev. Code. § 119.09. Importantly, the agency referred to in the excerpted statutory text is the Ohio Department of Education acting via the State Board of Education, as elucidated by state regulations implementing the state statute. *See* Ohio Admin. Code §§ 3301-73-03, 3301-73-20 ("State board under this chapter means the Ohio state board of education."); ("The state board may decide to accept, reject, or modify the report and recommendation or remand the matter to the hearing officer. The state board shall memorialize the decision on the report and recommendation through a written resolution and/or order."). Absent such final action by the agency, the matter is ongoing. Moreover, Plaintiff—just like the Plaintiff in *Youseff*—filed a complaint in the intervening time. (*See* ECF No. 1). Thus, the relevant state proceedings are ongoing for the purposes of *Younger* and the first prong is satisfied.

### 2. Important State Interest

To invoke *Younger* abstention, the state proceeding must "involve an important state interest." *Aaron*, 914 F.3d at 1018. Here, AGO Defendants, relying on *Freshwater v. Mount Vernon City Sch. Dist. Bd. of Educ.*, No. 2:11-CV-190, 2011 WL 1303322, at *2 (S.D. Ohio Apr. 5, 2011), argue that deciding who is allowed to teach in Ohio's schools is an important state interest. (ECF No. 18 at 6). Put differently, such regulation involves the determination of fitness to teach. (*See id.*). Plaintiff fails to respond to this point altogether. (*See* ECF No. 25).

As cited by AGO Defendants, Courts have found that such regulation involves an important state interest. *See Mall*, 2020 WL 3173149, at *4; *Durstein*, 2019 WL 6833858, at *11. Thus, this prong is satisfied.

### 3. Adequate Opportunity to Raise Constitutional Challenge

Finally, Plaintiff has not demonstrated that he lacks an adequate opportunity to raise constitutional challenges. Plaintiff asserts that because he cannot raise a constitutional challenge in the state board of education's administrative proceeding, he is deprived of an adequate opportunity to raise such challenges. (*See* ECF No. 25 at 4). AGO Defendants, relying on two Ohio state cases, argue that Plaintiff will have a sufficient opportunity to raise constitutional challenges in the state process because he can make those arguments upon judicial review of a final order. (ECF No. 18 at 7) (citing *Pivonka v. Corcoran*, 162 Ohio St.3d 326, ¶ 24, 2020-Ohio-3476, 165 N.E.3d 1098 (Ohio 2020) and *State ex rel. Kingsley v. State Emp. Rels. Bd.*, 130 Ohio St.3d 333, ¶ 18, 2011-Ohio-5519, 958 N.E.2d 169 (Ohio 2011). Thus, AGO Defendants maintain, Plaintiff's contentions about his inability to raise constitutional challenges within the administrative proceeding does not constitute an absence of an adequate opportunity for purposes of *Younger*. (ECF No. 18 at 7).

Although Plaintiff is correct that hearing officers may not decide constitutional questions, "Ohio law allows him the opportunity to appeal that decision to the state courts." *Mall*, 2020 WL 3173149, at *4 (citing Ohio Rev. Code §119.12).[1] Moreover, this is all that the third prong under *Younger* requires. In *Watts v. Burkhart*, the Sixth Circuit held that plaintiffs have an adequate opportunity to raise a constitutional challenge provided they are able to do so "at some point in the state proceedings," including upon appeal of an order issued by a state administrative agency. *See Watts v. Burkhart*, 854 F.2d 839, 848 (6th Cir. 1988) (citing *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986) ("it is sufficient ... that constitutional claims

---

[1] Specifically, Ohio Rev. Code §119.12 provides that "any party adversely affected by any order of an agency issued pursuant to an adjudication … denying the … renewal … or revoking or suspending a license … may appeal … to the court of common pleas." Ohio Rev. Code Ann. § 119.12.

11

may be raised in state court judicial review of the administrative proceeding."). Accordingly, the third prong is met. Thus, *Younger* abstention presumptively applies.

*4. Exceptions to Younger Abstention Doctrine*

Having determined that the three requirements for *Younger* abstention are met in this case, the Court next must determine whether any of the exceptions to *Younger* applies. The Supreme Court recognizes exceptions to the *Younger* abstention doctrine under three circumstances: "(1) where the state proceeding is motivated by a desire to harass or is conducted in bad faith; (2) where [a] challenged statute is flagrantly and patently violative of express constitutional prohibitions; and (3) where there is an extraordinarily pressing need for immediate federal equitable relief." *Schwab v. Kent Cty. Parole Dir.*, No. 1:20-CV-669, 2020 WL 5087881, at *3 (W.D. Mich. Aug. 28, 2020) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); *Moore v. Sims*, 442 U.S. 415, 424 (1979); and *Kugler v. Helfant*, 421 U.S. 117, 125 (1975)) (internal quotations and citations omitted). "The exceptions to *Younger* have generally been interpreted narrowly by the Supreme Court and the Sixth Circuit." *Kalniz*, 699 F. Supp. 2d at 973 (citing *Gorenc v. City of Westland*, 72 F. App'x 336, 338−39 (6th Cir. 2003)).

Although not clearly, Plaintiff appears to argue in his Reply that the exceptions to *Younger* apply. In support, Plaintiff alleges that the state proceeding is the product of bad faith and harassment by Defendants. (ECF No. 25 at 5–7). Beginning with bad faith, Plaintiff offers three examples. (*Id.* at 5–6). First, he argues that his initial termination from the Columbus City Schools—events that are not directly at issue in this litigation—was motivated by what he calls "hidden retaliation" for his reporting of a building violation (i.e., he argues his classroom was improperly on the second floor). (*Id.*). Next, he asserts that the Principal of his school forged a document, enabling a pretextual reason for Plaintiff's termination. (*Id.* at 6). Finally, Plaintiff

attempts to recast his statute of limitations argument—that the state proceedings regarding his license were initiated too late—as additional evidence of bad faith. (*Id.*).

Additionally, Plaintiff argues that he is the victim of what he calls "*Dombrowski* harassment." (*Id.*). As a threshold matter, it is not clear what Plaintiff means when he asserts this argument regarding *Dombrowski*. (*See id.*). That case involved a civil action by an organization that sought to foster the civil rights for African Americans in Louisiana against "the Governor, police and law enforcement officers, and the Chairman of the Legislative Joint Committee on Un-American Activities in Louisiana." *Dombrowski v. Pfister*, 380 U.S. 479, 482 (1965). The organization sought declaratory relief and an injunction "from prosecuting or threatening to prosecute appellants for alleged violations of the Louisiana Subversive Activities and Communist Control Law and the Communist Propaganda Control Law." *Id.*

To be clear, it is difficult for the underlying conduct complained of in *Dombrowski* to be more different than what Mr. Watkins alleges he experienced here. Indeed, in *Dombrowski*, challengers were subjected to the following:

> At gunpoint their homes and offices were raided and ransacked by police officers and trustees from the House of Detention acting under the direct supervision of the staff director and the counsel for the State Un-American Activities Committee. The home and office of the director of Southern Conference Educational Fund were also raided. Among the dangerous articles removed was Thoreau's Journal. A truckload of files, membership lists, subscription lists to SCEF's newspaper, correspondence, and records were removed from SCEF's office, destroying its capacity to function. At the time of the arrests, Mr. Pfister, Chairman of the Committee, announced to the press that the raids and arrest resulted from 'racial agitation'.

*Id.* at 488 n.4 (1965). Thus, Plaintiff is essentially asserting that he is experiencing retaliation from the State—much like the challengers in *Dombrowski*—for similarly discharging his duties as a teacher: apparently to safeguard the rights of his students.

As a threshold matter, it is extremely unlikely that the Court would find, under this case's facts that any of the exceptions apply here. First, neither the Supreme Court nor the Sixth Circuit "has ever authorized federal intervention under the bad faith or harassment exception." *O'Brien v. Herold*, No. 2:20-CV-02406, 2021 WL 364255, at *6 (S.D. Ohio Feb. 3, 2021) (Marbley, J.) (citing *Tindall v. Wayne Cty. Friend of the Court*, 269 F.3d 533, 539 (6th Cir. 2001) and *Kalniz*, 699 F. Supp. 2d at 973). Moreover, Plaintiff's shocking comparison of his situation to that of civil rights activists in *Dombrowski* does little to disturb this conclusion. While Plaintiff does not appear to address the second and third exceptions to *Younger*, a brief review of those standards bolsters the unlikelihood that they would apply.

With respect to "the flagrant unconstitutionality exception, a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Doe v. Univ. of Kentucky*, 860 F.3d 365, 371 (6th Cir. 2017). Thus, demonstrating "such flagrant unconstitutionality is a high bar" that requires the challenged policy to be facially unconstitutional "as well as in application." *Id.* Even absent argument, it is highly unlikely that Plaintiff can make this showing regarding the state board of education's administrative hearing procedures.

Finally, for the third exception to attach Plaintiff again faces an exceedingly demanding task: he must show "such circumstances … [that are] 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Moore v. Sims*, 442 U.S. 415, 433 (1979) (quoting *Kugler v. Helfant*, 421 U.S. 117 (1975)). In *Sims*, the district court found that "[t]he denial of custody of the [appellees'] children pending any hearing regardless of the result of the hearing, is in itself sufficient to prevent the application of *Younger*." *Sims v. State Dep't of Pub. Welfare of*

14

*State of Tex.*, 438 F. Supp. 1179, 1187 (S.D. Tex. 1977), *rev'd sub nom*. *Moore v. Sims*, 442 U.S. 415 (1979). Yet even under these circumstances—where parents sought an injunction to reinstate custody of their children (as opposed to a teaching license), the Supreme Court declined to invoke this exception. *Moore v. Sims*, 442 U.S. 415, 435 (1979).

Here, Plaintiff's license has not yet been revoked. Indeed, ODE Defendants have argued that under Ohio law, such a posture would technically allow the teacher to continue teaching during the pendency of the proceedings. (ECF No. 17 at 5) ("The last paragraph of that statute allows Watkins to continue to work on the license at issue until the ODE proceedings have resolved."). Thus, Plaintiff, at this time, cannot demonstrate that he has an "extraordinarily pressing need for immediate federal equitable relief" under the current factual record. Taken together, no exception disturbs the conclusion that *Younger* abstention applies.

### B. Dismissal

Since *Younger* abstention is appropriate, the Court finally must determine the proper procedural means of abstaining. The Sixth Circuit has instructed district courts to examine the type of relief sought by the plaintiff to decide whether to dismiss or stay a case under *Younger* abstention:

> [T]he United States Supreme Court has held that "[u]nder our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary.".... Whether the plaintiffs seek legal versus an equitable remedy controls how the district court disposes of the case after holding that the *Younger* doctrine applies to it. If the plaintiffs seek equitable relief, such as an injunction, then the district court may exercise its discretion and decide whether to dismiss the case, and we would then review its decision for abuse of discretion. But where ... the plaintiffs seek purely legal relief, in the form of damages, *Quackenbush* prevents the district court from even exercising its discretion and deciding to dismiss the case."

*Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 702 (6th Cir. 2013) (internal citations omitted). Further, when a plaintiff seeks both equitable and legal relief, many courts in the Sixth Circuit stay

15

the entire case rather than treat each form of requested relief differently. *See, e.g.*, *Jordan v. Union Twp. Bd. of Trustees*, No. 1:18-CV-53, 2019 WL 5576499, at *5 (S.D. Ohio Oct. 29, 2019) (staying case when the plaintiff sought both equitable and legal relief); *Huth v. Hubble*, No. 5:14-cv-1215, 2015 WL 966307, at *10 (N.D. Ohio Mar. 4, 2015) (same); *Schwab v. Kent Cty. Parole Dir.*, No. 1:20-CV-669, 2020 WL 5087881, at *4 (W.D. Mich. Aug. 28, 2020) (same).

Here, Plaintiff seeks both equitable relief (an injunction) and legal relief (damages) in this action. (ECF No. 1). As a result, the Court **STAYS** the case pending resolution of the state administrative proceedings in their entirety.

### IV. CONCLUSION

Because the Court finds *Younger* abstention proper, the Court **STAYS** the current action. Accordingly, Plaintiff's Motion for Preliminary Injunction is **DENIED** (ECF No. 16). Moreover, the Defendants' Motions to Dismiss (ECF Nos. 26, 27), are held in **ABEYANCE** until after the State Proceeding is resolved. The parties are directed to file a joint status report at the conclusion of the State Action apprising the Court whether any issues remain for adjudication here or whether dismissal is appropriate. The parties should attach a copy of the final judgment and any dispositive orders from the State Action as exhibits to the joint status report.

**IT IS SO ORDERED.**

_____
ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATED: March 7, 2022**